Judgment of the Supreme Court, New York County (David O. Boehm, J.), entered on December 18, 1984, which, inter alia> found in favor of plaintiff against defendant the American Museum of Natural History on the issue of liability, is affirmed, without costs or disbursements.
Plaintiff commenced this action to recover damages for personal injuries sustained when he slipped and fell on the front steps of defendant the American Museum of Natural History. On the day of the accident, August 11, 1981, plaintiff, who was then 27 years old and a school bus driver for Pierce Coach Lines, was accompanying a group of 60 children and 9 counselors from the Belrose YMCA in Queens on an excursion to the museum. Plaintiff testified that there were people sitting on the steps eating lunch and reading newspapers. He also noticed tissues and other papers strewn about. A food concession stand, operated by ARA Services, Inc., at the behest of the museum, was located on a plaza midway up and to the right of the front steps. Nearby were six or seven tables at which people were observed to be having lunch. Use of the tables and chairs was not restricted to persons purchasing food from ARA.
At approximately 12:00 p.m., plaintiff went into the museum’s main lobby through a revolving door on the front main entrance. When the guard directed plaintiff and his group to the entrance at the bottom and to the side of the front steps, they then exited through a revolving door just to the left of the one that they had entered. According to plaintiff, he was the last of the group of 70 people to descend the stairs. As he *702 reached the third step, his foot slipped underneath him, and he "came up in the air with a piece of paper” next to his left foot. Plaintiff described the object in question as a white, waxy piece of paper. On cross-examination, plaintiff stated that he did not see the paper before he fell. Defendant contends that since plaintiff was the only witness to testify about the piece of paper on which he allegedly slipped, the jury’s verdict was against the weight of the evidence. However, there was no proof to the contrary. No one contradicted plaintiff’s assertion. One of the counselors, Ruth Portnoy, who testified that she heard a noise and turned around to observe plaintiff in midair, merely denied having noticed anything on plaintiff’s shoe or near him when he fell. Police Officer Mohrmann, another witness relied upon by defendant, also failed to see any debris on the steps, but his observation occurred some 15 or so minutes after the incident. Under these circumstances, the jury, confronted with a matter of credibility, was not unwarranted in accepting plaintiff’s account of what had transpired.
Defendant’s second argument relates to whether plaintiff succeeded in demonstrating that the former possessed actual or constructive notice of the debris on the steps. (See, Madrid v City of New York, 42 NY2d 1039.) In that connection, viewing the proof in a light most favorable to plaintiff and according plaintiff the benefit of every reasonable inference, as we are required to do, it cannot be said as a matter of law that the evidence was inadequate to permit the jury to determine that defendant knew or should have known that a dangerous condition in the form of refuse existed on the steps of the museum at the time that plaintiff was injured. (See, Negri v Stop & Shop, 65 NY2d 625.)
The record clearly indicates that the museum had contracted with ARA to provide food and drink at an outdoor snack bar in a plaza immediately adjacent to the main steps leading to the front entrance of the building. Moreover, the museum’s employees admitted that they were aware that people regularly congregated on the front steps for the purpose of, among other things, eating their lunch and reading. Defendant also recognized that the number of persons who did so was at its highest peak during the normal lunch hour of 12:00 noon to 1:00 p.m. In addition, the museum acknowledged that papers, food and other litter were scattered about on the steps on a continuing basis and that this constituted a dangerous condition which could cause persons to slip and fall. Indeed, in order to minimize the hazard, the museum assigned individuals to clean the steps and the surrounding area and to *703 chase people who were eating on the steps. The fact that plaintiff may not have been able to provide particulars with respect to the specific piece of paper upon which he slipped is not dispositive. (Gramm v State of New York, 28 AD2d 787, affd 21 NY2d 1025.) So long as plaintiff was able to show that defendant was aware of the debris problem and was, therefore, under a landowner’s duty to maintain its property in a reasonably safe condition by removing that debris (see, Basso v Miller, 40 NY2d 233), the jury was authorized in deciding that the museum, by giving its cleaner a lunch break between noon and 1:00 p.m. and not assigning a replacement, negligently left the litter-prone main steps unpoliced and unmaintained during a crucial peak period. Indeed, the jury could conclude that the museum was the cause of the hazardous condition as a result of its desire to " 'look busy like the Metropolitan Museum. They wanted people on the steps.’ ” Consequently, there was certainly more than sufficient proof to support a finding that the museum had constructive, if not actual, notice of the dangerous condition of the steps. Concur —Fein, Milonas and Rosenberger, JJ.
Murphy, P. J., and Kassal, J., dissent in a separate memorandum by Kassal, J. Kassal, J. (dissenting). I dissent and would reverse the judgment and dismiss the complaint.
The issue presented is whether there are circumstances when a fall in a public area, resulting from a foreign substance, may constitute negligence in the absence of some proof of notice, actual or constructive, on the part of the owner or operator of the premises.
The action was brought to recover for personal injuries sustained when plaintiff slipped and fell on wax paper on the front steps of the American Museum of Natural History. In my view, the proof at trial failed to establish a prima facie case in that there was no evidence to establish actual or constructive notice of the claimed dangerous condition. The determination of this question depends upon whether the defendant had notice and a sufficient opportunity, in the exercise of reasonable care, to correct it. (Lewis v Metropolitan Transp. Auth. 64 NY2d 670.)
In the summer of 1981, ARA Services, Inc., which had previously operated an indoor cafeteria in the museum, was granted the concession to operate an outdoor snack bar, pursuant to an agreement with the museum, whereby it sold hot dogs, yogurt, fresh fruit, canned soda, ice cream and potato chips. This was done at a patio adjacent to the main steps leading to the front entrance. The outdoor food service *704 was established as a result of a decision by the museum officials, who desired to make the museum "look busy like the Metropolitan Museum. They wanted people on the steps.” There was testimony at trial that people frequently congregated and ate on the front steps and that museum officials were aware of this situation and the need to keep the steps clean to avoid possible injury to persons. As a result, guards were instructed that no one was to sit or eat on the steps and an employee was assigned to clean the front steps between the hours of 8:00 a.m. and 4:45 p.m. The cleaner was at lunch between 12:00 noon and 1:00 p.m., admittedly the time of day when there was the greatest concentration of people at the front of the museum.
The accident occurred on August 11, 1981. Plaintiff, a 27-year-old bus driver, had driven a bus and accompanied a group of 60 children and 9 counselors from a YMCA day camp, on a field trip to the museum. After arriving at the museum at 11:30 a.m., the group went to a picnic area for lunch, following which they prepared to enter the museum. One of the counselors, Ruth Portnoy,' testified that, as the group approached the front of the museum, " 'there were a lot of people eating lunch on the steps.’ ” This was between 12:00 noon and 12:15 p.m. Plaintiff testified similarly that there were people eating on the steps and that there were "papers lying around.” The group ascended the steps, during which, Portnoy and one of the children slipped. She referred to the steps as "slippery”. Upon entering through the revolving door at the top of the steps, they were instructed to return and use an entrance at the bottom of the steps. As the group descended, plaintiff testified he slipped on a piece of wax paper on the third step, causing him to slide down the stairs on his back. In his direct examination, he said he observed " 'a piece of paper next to me, next to [my foot].’ ” On cross-examination, he amended this to say that he slipped on "a piece of paper.” Portnoy testified she saw the plaintiff immediately after the accident, noticed nothing on his shoe and did not see "anything near him in the vicinity.” The police officer who responded to the scene, within minutes following the accident, testified that he observed no paper or debris on the steps and that plaintiff had told him that he had "slipped off the steps.” Following a trial on liability only, the jury returned a verdict in favor of the plaintiff.
To establish liability based on negligence from the presence of a foreign object, there must be proof of the existence of a duty and a breach of that responsibility after due notice of the *705 defective condition. My review of the record does establish an awareness on the part of the museum that it did have some duty to its patrons to ensure their safety in connection with the use of the steps, resulting from its direction to the guards not to allow persons to sit and eat on the steps, as well as the creation of a cleaning service to maintain the area. However, there was no proof to establish that the museum had any notice, actual or constructive, that the piece of paper on which plaintiff slipped had been present for any period of time, let alone a period sufficient to have afforded the museum an opportunity to correct the condition. While it has been shown that the museum was aware that customers did carry food purchases to the area of the front steps from the food concession, the record is barren of any proof that the wax paper which allegedly caused the fall had been there for any period of time or that it came from a product purchased at the outdoor snack bar.
Our courts have held that property owners have an obligation to exercise reasonable care to ensure that customers or persons legally present are not exposed to danger, either through conditions inside the establishment or at the entrance which the public is invited to use. (Miller v Gimbel Bros., 262 NY 107, 108.) However, the cases hold that there must be either proof of notice or that defendant created the dangerous condition which caused the injury to establish a prima facie case (Eddy v Tops Friendly Markets, 59 NY2d 692, affg 91 AD2d 1203; Bogart v Woolworth Co., 24 NY2d 936; Cameron v Bohack Co., 27 AD2d 362; Dowling v Woolworth Co., 16 AD2d 672). In Eddy, summary judgment was granted dismissing the complaint, in a case where plaintiff had slipped on a deodorant bottle in the aisle of defendant’s supermarket. There was no proof submitted on the motion to establish actual or constructive notice, other than that, at the time plaintiff entered the store, there were boxes, piled up along the aisle, from which stockboys removed items and placed them on the shelves. In Dowling, plaintiff fell on a piece of hamburger meat on the floor of defendant’s store. The Appellate Division, Second Department, dismissed the complaint since there was no proof that defendant had notice of the presence of the foreign substance on the floor or that its employees created the dangerous condition.
Similarly, in Bogart v Woolworth Co. (supra, p 937), where plaintiff slipped on a piece of coconut candy or cookie, the Court of Appeals reversed the order of the Appellate Division, Third Department, and dismissed the complaint since there *706 was no proof of actual or constructive notice "of the particular debris which allegedly caused plaintiffs fall.” In that case, there had been testimony by defendant’s janitor that defendant was aware that children were always throwing debris on the sidewalk in front of the store and that he was told to keep the sidewalk swept as often as possible.
Greco v Acme Super Markets (17 AD2d 899), is distinguishable. In that case, plaintiff slipped and fell in melted ice cream on the flood near the checkout counters of defendant’s retail grocery store. The Appellate Division, Fourth Department, reversed the judgment which had dismissed the complaint at the close of plaintiffs case since, although there was no proof of actual notice, a witness did testify that plaintiff had fallen in a "white mess” which she had observed 30 to 45 minutes earlier when she entered the store. The court found that this posed a jury question as to whether defendant had constructive notice of the alleged dangerous condition.
Kelsey v Port Auth. of N. Y. & N. J. (52 AD2d 801), is also distinguishable. There, plaintiff slipped and fell on defendant’s stairs, sustaining a trimalleolar fracture of the left ankle. She testified that, when she first descended the same stairs, 15 to 20 minutes earlier, she had observed "cigarette butts, paper cups and wetness on two steps of the stairway.” Although plaintiff could not specify exactly what had caused her to fall, we found that the jury could infer that the condition which was present when she first descended the stairs had not been corrected 15 to 20 minutes later and, therefore, there was a jury issue on the issue of constructive notice.
What distinguishes our case from both Greco (supra) and Kelsey (supra), is that here, there was no evidence to establish that the piece of paper on which plaintiff slipped and fell had been on the steps for any period of time prior to the accident. This also distinguishes the situation here from the recent decision of the Court of Appeals in Negri v Stop & Shop (65 NY2d 625), where the court found sufficient proof of constructive notice. In that case the injured plaintiff, while shopping in the store, fell backward and, without coming into contact with the shelves, hit her head on the floor. There was testimony that there were "a lot of broken jars” of baby food on the floor and that the baby food was "dirty and messy.” There was also proof that the aisle had not been cleaned or inspected for between 50 minutes and 2 hours prior to the accident. On that basis, the court held (p 626) that "it cannot be said, as a matter of law, that the circumstantial evidence was insufficient to permit the jury to draw the necessary inference that *707 a slippery condition was created by jars of baby food which had fallen and broken a sufficient length of time prior to the accident to permit defendant’s employees to discover and remedy the condition.”
Unlike Negri v Stop & Shop (supra), and the other cited cases, the proof here did not establish that the wax paper had been present for any period of time prior to the occurrence, only that plaintiff claimed to have fallen on this wax paper. Thus, there was a failure of proof by plaintiff and the matter should not have been submitted to the jury. As we held in Kritz v Manufacturers Hanover Trust Co. (33 AD2d 753), "The presence of a IVz to 2 inch piece of paper, similar to a candy wrapper, on the bank’s doorstep is not of such a character as to impose liability on the defendant or of such a nature that the probability of injury could have been foreseen in the exercise of care and prudence.”
Concededly, liability may be found if there be adequate proof of notice. However, the predicate liability upon the facts here would create an insurer-type of responsibility arising solely from the nature of the premises and the fact that the public is invited to attend and enjoy. This would result in an unwarranted extension of absolute liability in similar situations. If we were to follow the majority’s position, among the categories of locations that would be likewise liable on that theory would be the Fifth Avenue Public Library, stadiums for sporting events, movie theatres where popcorn, candy and soda are sold and encouraged to be taken to seats, department stores and shopping malls where on-premises food is sold, supermarkets, particularly near the fruit and vegetable counters, Madison Square Garden and other museums and public buildings. A further extension might impose responsibility upon the City of New York at the several Fifth Avenue parades for falls on debris from licensed food, soda and ice cream vendors. To hold owners to a standard of absolute liability for any injury resulting from the presence of a foreign object or defect, without notice, is an unwarranted extension of liability.
In my view, the judgment should be reversed and the complaint dismissed.